# United States Court of Appeals for the Federal Circuit

---

**CP KELCO US, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, NEIMENGGU FUFENG BIOTECHNOLOGIES CO., LTD., SHANDONG FUFENG FERMENTATION CO., LTD.,**
*Defendants-Appellees*

---

2019-1207

---

Appeal from the United States Court of International Trade in Nos. 1:13-cv-00288-RWG, 1:13-cv-00289-RWG, Senior Judge Richard W. Goldberg.

---

Decided: February 10, 2020

---

NANCY NOONAN, Arent Fox, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by MATTHEW L. KANNA, FRIEDERIKE GOERGENS.

KELLY A. KRYSTYNIAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by JOSEPH H. HUNT, JEANNE DAVIDSON, PATRICIA M. MCCARTHY; BRANDON JERROLD CUSTARD, Office of the Chief Counsel for Trade Enforcement and

Compliance, United States Department of Commerce, Washington, DC.

JORDAN CHARLES KAHN, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, Washington, DC, argued for defendants-appellees Neimenggu Fufeng Biotechnologies Co., Ltd., Shandong Fufeng Fermentation Co., Ltd. Also represented by DHARMENDRA NARAIN CHOUDHARY, BRANDON M. PETELIN, ANDREW THOMAS SCHUTZ; BRUCE M. MITCHELL, NED H. MARSHAK, New York, NY.

---

Before NEWMAN, MOORE, and CHEN, *Circuit Judges.*

MOORE, *Circuit Judge.*

CP Kelco U.S., Inc. appeals the decision of the United States Court of International Trade (Trade Court) upholding the Department of Commerce's treatment of *Xanthomonas Campestris* (*X. Campestris*) as an asset rather than a direct material input, and Commerce's decision to use the Thai Fermentation Industry Ltd. (Thai Fermentation) financial statements to calculate surrogate financial ratios. For the reasons described below, we affirm the Trade Court's decision to uphold Commerce's treatment of *X. Campestris* as an asset. We reverse its decision regarding Commerce's use of the Thai Fermentation financial statements to calculate surrogate financial ratios and reinstate Commerce's determination to use the Ajinomoto (Thailand) Co., Ltd. (Thai Ajinomoto) financial statements.

BACKGROUND

This appeal comes to us following a long and complicated procedural history, both at Commerce and the Trade Court. On June 5, 2012, CP Kelco filed a petition concerning imports of xanthan gum from the People's Republic of China (PRC). On July 2, 2012, Commerce initiated an antidumping duty investigation of xanthan gum from the PRC for the period of investigation of October 1, 2011

through March 31, 2012. Appellees Neimenggu Fufeng Bi-otechnologies Co., Ltd. and Shandong Fufeng Fermenta-tion Co., Ltd. (collectively, Fufeng) export xanthan gum from the PRC.[1]

## A. Commerce's Determination

On January 3, 2013, Commerce preliminarily deter-mined "that xanthan gum from the People's Republic of China (PRC) is being, or is likely to be, sold in the United States at less than fair value (LTFV)." Commerce consid-ers the PRC to be a non-market economy (NME) country. For a NME country, Commerce must "determine the nor-mal value of the subject merchandise on the basis of the value of the factors of production utilized in producing the merchandise . . . . based on the best available information regarding the values of such factors in a market economy country . . . ." 19 U.S.C. § 1677b(c)(1). The normal value is calculated as "the price at which the foreign like product is first sold . . . in the exporting country." *Id.* § 1677b(a)(1)(B)(i). Commerce values factors of production by utilizing "prices or costs of factors of production" from a market economy country that is "at a level of economic de-velopment comparable to that of the nonmarket economy country" and is a "significant producer[] of comparable merchandise." *Id.* § 1677b(c)(4). Commerce chose Thai-land as the primary surrogate country for the investigation because it "is economically comparable to the PRC and is a significant producer of comparable merchandise."[2]

---

[1]    Commerce determined that Neimenggu Fufeng Bi-otechnologies Co., Ltd. and Deosen Biochemical Ltd. ex-ported the largest volume of xanthan gum from the PRC during the period of investigation. Deosen is not a party to this appeal.

[2]    The comparable merchandise selected is monoso-dium glutamate (MSG) and l-lysine because, like xanthan gum,  they  are  added  to  foods  and  have  substantially

Commerce used the audited financial statements of Thai Ajinomoto to value factory overhead, selling, general, and administrative expenses, and profit. Commerce preliminarily assessed an antidumping margin of 21.69 percent for Fufeng.

In the Final Determination, Commerce concluded Fufeng was selling xanthan gum in the United States at less than fair value and assessed Fufeng a 12.90 percent dumping margin. *Xanthan Gum from the People's Republic of China*, 78 Fed. Reg. 33,351 (Dep't of Commerce June 4, 2013) (final determ.), as amended, 78 Fed. Reg. 43,143 (July 19, 2013) (amend. final determ.). As part of its determination, Commerce considered whether *X. Campestris* is (1) a direct material that should be valued as a factor of production or (2) was accounted for in the surrogate financial ratios and therefore did not need to be valued separately as a direct material input. Commerce did not value *X. Campestris* as a factor of production, or a direct material input, because Fufeng's costs associated with the maintenance and use of *X. Campestris* bacteria are similar to those of Thai Ajinomoto's costs associated with maintaining the bacteria used to produce comparable merchandise (i.e. MSG and l-lysine). Commerce found that evidence on the record of the present investigation shows that (1) Fufeng and Deosen "acquired [their] [*X. C*]*ampestris* strain for payment-in-full long before the [period of investigation]," (2) "the acquisitions included the right to further grow and exploit the resulting bacteria for the production of xanthan gum," and (3) Fufeng and Deosen continually regenerate the bacteria for use in their xanthan gum production. Due to their "ownership and regenerative use of

---

similar production processes based on bacteria fermentation. Therefore, the manufacturing facilities, materials, and energy amounts required for production are similar.

the bacteria," Commerce determined that it is more similar to an asset than a direct material input. J.A. 8174.

In calculating the surrogate financial ratios, Commerce used the Thai Ajinomoto financial statements. The financial statements of Thai Fermentation were also on the record, however, Commerce determined them to be incomplete and that it would not have been able to fully evaluate the financial information contained therein. The parties disagreed as to which financial statements were appropriate for use. CP Kelco supported the use of Thai Ajinomoto's financial statements, arguing that all other available statements are incomplete, not fully translated, or from companies that do not produce comparable merchandise. Fufeng argued that Thai Ajinomoto's financial statements are distorted by countervailable subsidies and supported the use of Thai Fermentation's financial statements. Commerce determined that the Thai Fermentation financial statements are incomplete because they lack complete English translations, precluding Commerce from fully evaluating the financial information contained therein, and noted its practice to exclude such statements. J.A. 8154. Specifically, two complete paragraphs at the bottom of Accounting note twelve, concerning depreciation of assets, are untranslated. *Id.* at n.70; *compare* J.A. 6280–81 *with* J.A. 6305–06. Although Commerce agreed with Fufeng that the Thai Ajinomoto statements show evidence of the receipt of countervailable subsidies, it noted that its general practice to exclude such statements presupposes the existence of other sufficiently reliable data. Having no such data, it found Thai Ajinomoto's statements to "represent the only complete and fully translated financial statements on the record" and therefore "the best available information within the meaning of the statute." J.A. 8152, 8154–55.

B.  First Trade Court Remand Order and Resulting
First Redetermination

CP Kelco appealed Commerce's final determination to the Trade Court, as relevant here, with respect to Commerce's decision to treat *X. Campestris* as an asset, rather than as a direct material input, and Fufeng appealed Commerce's selection of the Thai Ajinomoto financial statements over the Thai Fermentation statements for calculating surrogate financial ratios. *CP Kelco U.S., Inc. v. United States*, 2015 WL 1544714, at *1 (Ct. Int'l Trade Mar. 31, 2015) (*CP Kelco I*). The Trade Court upheld Commerce's decision to treat *X. Campestris* as an asset rather than as a direct material input determining it was supported by substantial evidence and was otherwise in accordance with law. *Id.* at *4. The Trade Court determined it was "reasonable for Commerce to use the time that Fufeng paid for the *X. Campestris* as evidence that the bacteria was an asset: Fufeng's one-time purchase and the bacteria's self-regenerating properties made it look like an asset." *Id.* It further determined that it was proper for Commerce to conclude that the bacteria was an asset based on grounds that the "bacteria self-regenerated, such that Fufeng only needed to pay for the bacteria once," rendering it "unlike direct material inputs used up in the production process." *Id.*

The Trade Court remanded Commerce's decision to use the Thai Ajinomoto financial statements to calculate surrogate financial ratios for further explanation, stating that "Commerce never addressed why the weakness of the Thai Fermentation statements—incompleteness—was worse than the weakness of the Thai Ajinomoto statements: evidence of subsidies." *Id.* at *6. The Trade Court explained that Commerce created its own conundrum by preemptively rejecting the Thai Fermentation statements, which then required it to accept the Thai Ajinomoto statements, the only other statements left on the record, despite evidence that Thai Ajinomoto had received countervailable

subsidies. *Id.* at \*7. Specifically, the Trade Court instructed that Commerce must "compare and contrast the Thai Fermentation and Thai Ajinomoto financial statements, and . . . explain why the Thai Ajinomoto statements constitute a better source." *Id.* at 8.

In its first remand redetermination, on July 24, 2015, Commerce compared Thai Fermentation's financial statements with Thai Ajinomoto's financial statements and again found that Thai Ajinomoto's statements constituted "the best available information on the record." Commerce noted that both companies' statements "are flawed in different ways" and that it must "decide which is the more serious flaw." J.A. 8242. It further noted its "well-established practice of excluding incomplete financial statements from consideration, whether due to missing information or a lack of full translation." *Id.* After considering the weaknesses of each financial statement, Commerce found the possibility that the Thai Fermentation statements are missing vital information to be the greater flaw. It found that Thai Ajinomoto's statements, although containing evidence of countervailable subsidies, are "complete and reliable" and the "parties . . . had an opportunity to comment on the complete financial statements." J.A. 8244–45. In rejecting the Thai Fermentation statements once again, Commerce explained that missing information in a financial statement could have a significant impact on the antidumping calculations and "parties cannot be allowed to selectively decide which portions of a financial statement to . . . leave untranslated," depriving other parties the opportunity to comment on potentially important information. J.A. 8244. Finally, it noted that "Fufeng had every opportunity to provide a full translation of Thai Fermentation's financial statements but that it failed to do so." *Id.*

C.    Second Trade Court Remand Order and Resulting
Second Redetermination

Fufeng again appealed Commerce's selection of the Thai Ajinomoto statements to the Trade Court. This time, the Trade Court determined that Commerce did not "faithfully compare the financial statements side by side" and had not "plumbed the implications [of the Thai Ajinomoto statements' countervailable subsidies] as it had plumbed the issues caused by incompleteness" affecting the Thai Fermentation statements. *CP Kelco U.S., Inc. v. United States*, 2016 WL 1403657, at *5 (Ct. Int'l Trade Apr. 8, 2016) (*CP Kelco II*). It further determined that Commerce does not have a "well-established" practice of rejecting all incomplete financial statements that would justify rejecting the Thai Fermentation statements summarily. *Id.* Therefore, the Trade Court again remanded, instructing Commerce to comply with the "court's main remand instruction to compare the Thai Ajinomoto and Thai Fermentation financial statements side by side in an evenhanded manner, evaluating the relative strengths and weaknesses of each." *Id.* Alternatively, the Trade Court offered that Commerce may find the Thai Fermentation statements to be missing "vital information," which the Trade Court previously recognized as a past practice of Commerce. *Id.* n.5. As another alternative, the Trade Court offered that Commerce could explain a change in practice, "from rejecting statements when they are missing vital information . . . to invariably rejecting any incomplete statements." *Id.*

On August 22, 2016, after adopting a practice of rejecting incomplete financial statements unless there are no other financial statements on the record, Commerce for a third time determined that the Thai Ajinomoto statements were the best available information to calculate surrogate financial ratios. It first acknowledged that Commerce has not always rejected incomplete financial statements without qualification but has at times rejected incomplete statements that are missing key information when it was

"vital." J.A. 8260 (citing *Ass'n of Am. Sch. Paper Suppliers v. United States*, 791 F. Supp. 2d 1292, 1304 (Ct. Int'l Trade 2011)). It then explained that because it considers that any missing information may be "vital," Commerce "intends to follow a practice of rejecting from use financial statements that are incomplete, whether due to missing or removed components of those statements or due to a lack of full English translation where the record evidence indicates that any part of the specific financial statements in question was not provided by a filer, unless there are no other financial statements left on the record." J.A. 8262. Commerce reasoned that this practice avoids Commerce's "speculation as to whether the missing information is a 'critical' or 'key' component necessary for the calculation of the surrogate financial ratios." J.A. 8262–63. Commerce then rejected Thai Fermentation's financial statements because they lack complete translations, finding that while the Thai Ajinomoto statements "show evidence of countervailable subsidies, [they] are complete and reliable and all parties have been afforded the opportunity to comment on their full content." J.A. 8263.

## D.    Third Trade Court Remand Order and Resulting Third Redetermination

Fufeng again challenged Commerce's remand results before the Trade Court. Despite having given Commerce the opportunity to explain a change in its practice, *CP Kelco II*, 2016 WL 1403657, at *5 n.5, the Trade Court determined that Commerce's new policy is not consistent with its statutory mandate because it is "not reasonably aimed at identifying the best available information or calculating the antidumping margins as accurately as possible" and "leads to an unreasoned outcome not supported by the record in these proceedings." *CP Kelco U.S., Inc. v. United States*, 211 F. Supp. 3d 1338, 1341–42 (Ct. Int'l Trade 2017) (*CP Kelco III*). The Trade Court explained that Commerce has "yet to provide any discussion of the issues presented by the use of the Thai Ajinomoto

statements or, more generally, by the use of financial statements that reflect countervailable subsidies." *Id.* at 1344. It again remanded Commerce's redetermination explaining that "Commerce should not select the Thai Ajinomoto statements unless it first compares the Thai Ajinomoto and Thai Fermentation financial statements side by side in an evenhanded manner, evaluating the relative strengths and weaknesses of each." *Id.* at 1345. Alternatively, it stated that "Commerce can reject the Thai Fermentation statements after making a reasoned finding that the two untranslated paragraphs in footnote twelve are 'vital' to the Department's analysis of the data." *Id.* The Trade Court instructed that "Commerce must specifically discuss what is missing from the Thai Fermentation statements and how the fact of the missing information impedes [Commerce's] calculations." *Id.* It gave Commerce the option of "either (1) explicitly exploring the relative impact of the imperfection in the Thai Ajinomoto statements (evidence of subsidies) and that in the Thai Fermentation statements (incompleteness) or (2) making a fact-sensitive finding that the Thai Fermentation statements are missing 'vital' information." *Id.*

On September 18, 2017, in its third remand redetermination, Commerce chose to reject the Thai Fermentation statements "after making a fact-sensitive finding that the Thai Fermentation statements are missing 'vital' information." J.A. 8280. In support of its finding, Commerce explained that "Thai Fermentation's financial statements are missing complete translations for two paragraphs of the property plant and equipment (*i.e.*, fixed asset) footnote," a key component of a company's financial statements. *Id.* Among other reasons, it explained that "the fixed asset footnote supports the use of depreciation expense," a critical component in ratio calculations. J.A. 8281. It also explained that "by virtue of comprising all or most of a company's overhead costs, depreciation expense is an integral component of the denominator of the selling,

general and administrative (SG&A) expense and profit ratios." *Id.* Because depreciation can significantly impact the surrogate financial ratios, such information is vital. Although Accounting note twelve contains a fully translated depreciation schedule, it is not reasonable to only rely on such a schedule because "the narrative portions of a company's footnotes can provide vital information regarding asset impairments, changes in useful lives of fixed assets, revaluations of fixed assets and the capitalization of production costs, among other things that are not shown on the numeric fixed asset schedule." J.A. 8283. Accordingly, Commerce concluded it could not reasonably rely on Thai Fermentation's financial statements as the best available information because the information missing from Thai Fermentation's fixed asset footnote is of "critical importance" to its analysis. J.A. 8283–84.

### E.    Fourth Trade Court Remand Order and Resulting Fourth Redetermination

After another appeal, the Trade Court again remanded to Commerce stating that "[u]nlike the prior proceedings cited by Commerce, here the Department has not identified a particular depreciation methodology, class of fixed assets, or statement by the auditor in the Thai Fermentation statements that is questionable or unreliable." *CP Kelco U.S., Inc. v. United States*, 2018 WL 1703143, at *3 (Ct. Int'l Trade Apr. 5, 2018) (*CP Kelco IV*). It explained that the "28-page Thai Fermentation financial statements provided to Commerce have full English translations with the exception of two paragraphs in a footnote concerning fixed assets," which no one has alleged were intentionally omitted. *Id.* Although Commerce has stated that the statements might be more reliable if fully translated, "Commerce has not made the case that the statements are *un*reliable, warranting their wholesale rejection." *Id.* The Thai Ajinomoto statements, on the other hand, "are in fact, as opposed to hypothetically, unreliable, due to evidence of countervailable subsidies." *Id.* The Trade Court found

that "Commerce's general discussion about depreciation does not comply with the [Trade Court's] instruction to make 'a fact-sensitive finding that the Thai Fermentation statements are missing "vital" information.'" *Id.* (quoting *CP Kelco III*, 211 F. Supp. 3d at 1345). Finding that the record does not support more than one reasonable result and does not contain substantial evidence supporting Commerce's decision to discard the Thai Fermentation statements, and that "any mystery surrounding the Thai Fermentation statements is essentially of [Commerce's] own making" where "Commerce is—and has always been—in possession of the 'missing' information" yet has failed to solicit a translation or translate the paragraphs itself, the Trade Court instructed that on remand, Commerce may "either translate the two paragraphs or leave them as is. Regardless, Commerce must use the Thai Fermentation statements to calculate surrogate financial ratios." *Id.* at *3–4. The Trade Court made clear that "the court will not provide [Commerce] any further room to maneuver." *Id.* at *4.

Although Commerce continued to find that the Thai Fermentation statements are missing "specific information that is vital in nature" and "should not be used to calculate the surrogate financial ratios," pursuant to the Trade Court's directive, on July 5, 2018, Commerce relied upon the Thai Fermentation financial statements to calculate Fufeng's weighted-average dumping margins for the final remand redetermination results. J.A. 8297 (Fourth Redetermination). As a result, the weighted-average dumping margin for Fufeng changed to 0.00 percent. J.A. 8300.

## F.    Fifth Trade Court Decision

In light of Commerce's use of the Thai Fermentation statements, the Trade Court found that the remand results were supported by substantial evidence and sustained the Fourth Redetermination. *CP Kelco U.S., Inc. v. United States*, 2018 WL 4469912 (Ct. Int'l Trade Sept. 17, 2018)

(*CP Kelco V*).　CP Kelco appealed the Trade Court's decisions sustaining Commerce's: (1) treatment of *X. Campestris* as an asset rather than a direct material input (*CP Kelco I*); and (2) determination to use Thai Fermentation's financial statements to calculate surrogate financial ratios (*CP Kelco V*).　We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review Commerce's decision using the same standard of review applied by the Trade Court, while carefully considering that court's analysis.　*Diamond Sawblades Mfrs. Coal. v. United States*, 866 F.3d 1304, 1310 (Fed. Cir. 2017).　We decide legal issues de novo and uphold factual determinations if they are supported by substantial evidence.　19 U.S.C. § 1516a(b)(1)(B)(i); *see Diamond Sawblades*, 866 F.3d at 1310.　For factual findings, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" considering the record as a whole.　*See Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1324 (Fed. Cir. 2017).　For legal conclusions, Commerce, in carrying out its statutorily assigned tasks, must make reasonable choices within statutory constraints.　*See, e.g., Nucor Corp. v. United States*, 927 F.3d 1243, 1248–49 (Fed. Cir. 2019).　Related principles govern the interpretation of regulations by an agency. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414–18 (2019).

Commerce must provide an explanation that is adequate to enable the court to determine whether its choices are actually reasonable.　*See CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1376–77 (Fed. Cir. 2016).　It must "examine the record and articulate a satisfactory explanation for its action." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).　Although we uphold "a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S.

281, 286 (1974), the required explanation must reasonably tie the determination under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding. "[A]n agency's statement of what it 'normally' does or has done before . . . is not, by itself, an explanation of 'why its methodology comports with the statute.' Whether it does so in a particular agency decision or in a cited earlier decision, the agency must ground such a normal or past practice in the statutory standard." *CS Wind Vietnam*, 832 F.3d at 1377 (quoting *SKF USA Inc. v. United States*, 263 F.3d 1369, 1383 (Fed. Cir. 2001).

## A. Treatment of *X. Campestris* as an asset rather than a direct material input (*CP Kelco I*)

We begin with Commerce's decision to treat *X. Campestris* as an asset rather than a direct material input. CP Kelco contends that Commerce's decision not to treat the production strain of *X. Campestris* as a factor of production and assign it a surrogate value is unsupported by substantial evidence and is not in accordance with law. Appellant's Br. 31–32. It argues that the plain language of the statute instructs Commerce to value factors of production, such as raw materials, used in producing the subject merchandise, and *X. Campestris* is a factor of production necessary for the production of xanthan gum. *Id.*; Appellant's Reply Br. 19 (citing 19 U.S.C. § 1677b(c); *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). It further argues that *X. Campestris* meets the factors Commerce has previously used to determine whether an input is a direct material input. Appellant's Br. 33–36 (citing *Seamless Refined Copper Pipe and Tube from the People's*

*Republic of China*, 75 ITADOC 60725 (Oct. 1, 2010) ("*Copper Pipe and Tube*") (cmt. 7)).[3]

Fufeng contends that substantial evidence supports Commerce's finding that Fufeng and Deosen "acquired [their] [X]. [C]*ampestris* strain for payment-in-full long before the POI, and that the acquisitions included the right to further grow and exploit the resulting bacteria for the production of xanthan gum." Appellees' Br. 55 (citing J.A. 8174). It argues that the Trade Court correctly held that the factors in *Copper Pipe and Tube* did not preclude Commerce's record-based finding that the bacteria was like an asset properly valued through the surrogate financial ratios. *Id.* at 55–56 (citing J.A. 10). The United States[4] argues that the statute does not speak to what criteria to use to determine whether something is a factor of production, and Commerce properly exercised its discretion to determine that *X. Campestris* was already accounted for in the surrogate financial ratios such that it did not need to be separately valued as a raw material. United States' Appellee Br. 12–14.

---

[3]    "[T]he Department will typically value a material as a direct material input if it is 1) consumed continuously with each unit of production, 2) required for a particular segment of the production process, 3) essential for production, 4) not used for 'incidental purposes,' or 5) otherwise a 'significant input into the manufacturing process rather than miscellaneous or occasionally used materials.'" *Copper Pipe and Tube* at cmt. 7.

[4]    The United States did not appeal the judgment below and therefore takes no position on Commerce's selection of financial statements. It responds solely to CP Kelco's challenge to the Trade Court's March 31, 2015 decision concerning *X. Campestris*.

The relevant statute directs Commerce to "determine the normal value of the subject merchandise on the basis of the value of the factors of production utilized in producing the merchandise" and the "valuation of the factors of production shall be based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by the administering authority." 19 U.S.C. § 1677b(c)(1). The statute requires Commerce to consider the value of factors of production, but does not specify what factors Commerce must use to determine whether something is or is not a factor of production.[5] Commerce evaluates whether something is a factor of production by determining whether it is a direct material input. As the Trade Court recognized, "Commerce has not used one monolithic test to evaluate whether or not an item is a direct material input or not, but has instead proceeded case by case." J.A. 10. Here, Commerce determined that *X. Campestris* is not a direct material input, but instead is an asset because it is self-replicating and does not require ongoing purchases to replenish its supply. *See, e.g., Copper Pipe and Tube.*

Commerce's decision to treat *X. Campestris* as an asset rather than a direct material input is supported by substantial evidence and is in accordance with law. Commerce found that evidence on the record of the present investigation shows that Fufeng and Deosen "acquired [their] [X]. [C]ampestris strain for payment-in-full long before the [period of investigation], and that the acquisitions included the right to further grow and exploit the resulting bacteria

---

[5]    Section 1677b(c)(3) merely indicates that "factors of production utilized in producing merchandise include, but are not limited to" (A) hours of labor required, (B) quantities of raw materials employed, (C) amounts of energy and other utilities consumed, and (D) representative capital cost, including depreciation.

for the production of xanthan gum," and that Fufeng continually regenerates the bacteria for use in its xanthan gum production. J.A. 8174. Due to Fufeng's "ownership and regenerative use of the bacteria," Commerce determined that it is more similar to an asset than a direct material input. *Id.* Because substantial evidence supports Commerce's findings, the Trade Court did not err in sustaining its decision.

### B.  Commerce's use of Thai Fermentation's financial statements to calculate surrogate financial ratios (*CP Kelco V*)

As an initial matter, Fufeng argues that CP Kelco failed to exhaust its administrative remedies and is precluded from challenging the Fourth Redetermination by failing to provide comments in response to the Draft Fourth Redetermination. CP Kelco responds that it filed comments before the Draft arguing Commerce should interpret the Trade Court's Fourth Remand Order to use an average of the financial ratios derived from the two companies' financial statements, which Commerce addressed in its Fourth Remand Redetermination. It argues that even had it repeated comments that it made throughout the entire proceeding, its efforts would have been futile as the Fourth Remand Order compelled Commerce to use the Thai Fermentation statements. CP Kelco's efforts would have likely been futile given the Trade Court's directive, but regardless, CP Kelco is not precluded from challenging the Fourth Remand Redetermination because it raised the arguments before the Draft and Commerce briefly addressed them. *See* J.A. 8298.

CP Kelco argues that the Trade Court exceeded its authority by directing Commerce to use the Thai Fermentation statements to calculate surrogate financial ratios rather than review the determination for substantial evidence. Appellant's Br. 18. It contends that Commerce provided a reasoned explanation as to why the Thai Ajinomoto

statement should be used, *id.* at 19, and that Commerce's reliance in its Fourth Remand Redetermination on Thai Fermentation's partially translated statements to calculate dumping margins is unreasonable, unsupported by substantial evidence, and is otherwise not in accordance with law, *id.* at 23–26.  Fufeng responds that the Trade Court properly ordered Commerce to use Thai Fermentation data after it repeatedly failed to conduct the comparison required by the substantial evidence and best available information standards that would be required to use the Thai Ajinomoto data.  Appellees' Br. 49–50.  It contends that Commerce, each time, gave short shrift to the Thai Fermentation statements, because they were missing two untranslated paragraphs, yet chose to use Thai Ajinomoto's subsidy-distorted data.  *Id.* at 34–35.

It was reasonable for Commerce to rely on the Thai Ajinomoto data.  In *CP Kelco III*, the Trade Court gave Commerce the option of "either (1) explicitly exploring the relative impact of the imperfection in the Thai Ajinomoto statements (evidence of subsidies) and that in the Thai Fermentation statements (incompleteness) or (2) making a fact-sensitive finding that the Thai Fermentation statements are missing 'vital' information."  *CP Kelco III* at 1345.  On September 18, 2017, in its third remand redetermination, Commerce chose the option to reject the Thai Fermentation statements "after making a fact-sensitive finding that the Thai Fermentation statements are missing 'vital' information."  J.A. 8280.  In support of its finding, Commerce explained that "Thai Fermentation's financial statements are missing complete translations for two paragraphs of the property plant and equipment (*i.e.*, fixed asset) footnote," a key component of a company's financial statements.  *Id.*  Among other reasons, it first explained that "the fixed asset footnote supports the use of depreciation expense," a critical component in ratio calculations.  J.A. 8281.  It also explained that "by virtue of comprising all or most of a company's overhead costs, depreciation

expense is an integral component of the denominator of the selling, general and administrative (SG&A) expense and profit ratios." *Id.* Therefore "depreciation can significantly impact the surrogate financial ratios," and such information is vital. *Id.* Although Accounting note twelve contains a fully translated depreciation schedule, Commerce determined that it is not reasonable to only rely on such a schedule because "the narrative portions of a company's footnotes can provide vital information regarding asset impairments, changes in useful lives of fixed assets, revaluations of fixed assets and the capitalization of production costs, among other things that are not shown on the numeric fixed asset schedule." J.A. 8283. Accordingly, Commerce concluded, because the information missing from Thai Fermentation's fixed asset footnote is of "critical importance" to its analysis, it could not reasonably rely on Thai Fermentation's financial statements as the best available information. J.A. 8283–84.

At least as of this third redetermination by Commerce where it determined that the missing information in the untranslated financial statement was vital information and of "critical importance," Commerce had adequately explained the reasoning underlying its decision to use the Thai Ajinomoto financial statements rather than the Thai Fermentation financial statements. To be clear, we do not decide today whether Commerce must accept or refuse a partial translation of financial statements in every case, or that it is required to do so. But we are satisfied that here, with its third redetermination, Commerce sufficiently explained its reason for choosing between two flawed financial statements. We therefore reinstate Commerce's decision to use the Thai Ajinomoto financial statements to calculate the surrogate financial ratios.

## CONCLUSION

For the foregoing reasons, we affirm the Trade Court's decision sustaining Commerce's treatment of *X.*

*Campestris* as an asset rather than a direct material input. We reverse its decision sustaining Commerce's use of the Thai Fermentation financial statements and reinstate Commerce's determination to use the Thai Ajinomoto financial statements to calculate the surrogate financial ratios. We have considered the parties' remaining arguments and find them unpersuasive.

**AFFIRMED-IN-PART AND REVERSED-IN-PART**

COSTS

Each party shall bear its own costs.